# GENERAL SESSIONS.

## NEW YORK, DECEMBER, 1823.

The People
vs.
James Dalton.  } FALSE PRETENCES.

The defendant was tried at the last term, on an indictment alleging that he obtained from one Hammelin three tubs of butter by a fraudulent pretence. The pretence set forth in the indictment was as follows, to wit, "that he was a grocer, residing at No. 77 Chatham street." This was negatived by the following averment: "that he, the said James Dalton, was not at the time mentioned a grocer, residing at No. 77 Chatham street, nor at any other place in the city of New York."

On the trial, Hammelin testified, that on the 29th day of October last, Dalton, with whom he had previously no acquaintance, came on board a vessel which he commanded, and which was then lying at some wharf ·in the city, and purchased a tub of butter, stating that he was a grocer, residing or doing business at No. 77 Chatham street. He did not pay for it at that time, but said he would.do so when he returned the tub. Hammelin tes-

*Where the defendant falsely stated that he was a grocer, and that he resided at a particular place, held a false pretence under the statute, and not a mere naked falsehood.*

*The question whether a pretence was such an one as might have been guarded against by ordinary prudence, is a question exclusively for the jury; except where it is manifestly such an one as could not, by possibility, deceive a man of common sagacity; in which latter case (semb.) the court will arrest the judgment.*

*The false pretence set forth in the indictment must be the sole inducement to the parting with the goods. If it appears that any act or declaration of the prisoner, forming part of the res gesta, and not set out in the indictment, formed part of the inducement, the prisoner is entitled to an acquittal. Mere accidental circumstances, however, not forming part of the res gesta, need not be set forth.*

N'W YORK,
Dec. 1823.

The People
v.
Dalton.

tified farther, that it was customary amongst masters of vessels to trust grocers residing in the city, and that he accordingly, without hesitation, permitted Dalton to take away the butter, relying on his promise for payment. Faithful to this promise, Dalton returned the tub, paid for the butter, and stated, that as it was good he would take three tubs more. Hammelin assented to this; but the prisoner did not again make his appearance. A few days afterwards Hammelin discovered that his whole story was false, and that no such person resided at 77 Chatham street. The witness farther stated that he should not have trusted Dalton had it not been for his representation as to his place of residence and his occupation.

*Francis A. Blake*, of counsel for the prisoner, inquired of the witness whether he had not been prepossessed in favor of the prisoner by his apparent honesty in fulfilling the promise he had made on his first purchase. The witness answered in the affirmative, and admitted, in reply to other questions to the same point, that he should not have parted with the butter last purchased, had not Dalton bought and paid for the former quantity. This, he said, he regarded as a cunning device.

Blake, for the prisoner.—There can be no dispute with regard to the facts in this case. I have not the slightest disposition to vindicate the moral honesty of the prisoner, but I do believe he is in point of law entitled to an acquittal. The questions we shall raise, however, will be addressed entirely to the consideration of the court.

Here his honor the Recorder observed, that the court at present entertained an impression that the prisoner, on the whole case, should be convicted; but that, as some

confusion existed amongst the authorities, it would perhaps be advisable, in order to settle the law, to suffer a verdict to pass by consent against the defendant, reserving the case for the opinion of the court.

Blake stated that he should not object to the course proposed, provided it were fairly understood that the prisoner's counsel should not, owing to consent, be confined after verdict to a mere motion in arrest of judgment founded on the record; but that the whole law arising on the evidence should be open for discussion on the argument of that motion. This was acceded to; and at the present term a motion was made in arrest of judgment, or for a new trial in the alternative.

F. A. Blake, for the prisoner.—It will not be contended, I presume, by the counsel for the people, that this case would have afforded good ground for an indictment either at common law or under the statute, 33 Hen. VIII. c. 1. Dismissing at once, then, the numerous cases which were adjudicated prior to the enactment of the statute, 30 Geo. II. c. 24, let us see how far this prosecution can be sustained under that statute and under our own.

By the 18th sec. of the statute (1 N. R. L. 410) it is enacted, that "every person who shall hereafter be convicted of knowingly and designedly, by false pretence, obtaining from any other person any money, goods, or chattels, or other effects, with intent to cheat or defraud any person, &c., shall be punished by fine and imprisonment, or either," &c.

I contend that the indictment, in the present instance, does not set forth a sufficient false pretence within the statute, on two grounds: first, the charge against Dalton consists in the uttering of a *mere naked falsehood*, whereby he obtained the goods from Hammelin on the faith of

*his own assertion only,* and *his own personal responsibili-ty,* without borrowing credit by using the name of *any other person whatever ;* in which case, I say, no indictment will lie. Again; I shall insist that the pretence set forth in the indictment is such an one as might have been guarded against by the exercise of ordinary prudence on the part of the seller ; that, by failing to exercise such prudence, he has been guilty of a culpable neglect—of such laches as destroys his right of resorting to this tribunal ; and that whether this is apparent on the face of the indictment or not, is a question of *law,* proper for the consideration of the court on a motion in arrest of judgment.

Should the opinion of the court be against the prisoner on these two points, and should it be decided that sufficient appears on the record to authorize a judgment, I shall still contend that a fact was disclosed in evidence *dehors* the indictment, which rendered it the peremptory duty of the jury to acquit, and that we are therefore entitled to a new trial. It appeared from the testimony of Hammelin, that he parted with his goods, not *solely* on the pretence set forth in the indictment, but owing to that pretence conjoined with the fact of Dalton's having purchased a quantity of butter of him previously, and having paid for it according to his promise, whereby Hammelin had been inspired with confidence in his honesty. I hold it to be true in principle, as well as settled by authority, that the false pretence alleged must be the *sole* inducement to credit ; and that whenever another motive appears to have operated on the mind of the seller, the case does not come within the provisions of the statute.

Having briefly stated the grounds on which I shall rely in this defence, I would beg leave, once for all, to express

my own views and opinions with regard to the morality of the transaction. I do not mean to offer a single suggestion in favor of the honesty of the prisoner, or to attempt for one moment a vindication of his character. If the principles of criminal jurisprudence could with propriety be extended to the punishment of every dereliction from social duty, I should not at the present time appear before this court in his defence. It is not, perhaps, to be regretted that he has already suffered an imprisonment of considerable duration, while this prosecution has been pending. While I admit, however, the moral turpitude of his conduct, I would remark that his offence belongs, in my opinion, to a class of cases which human legislation cannot with safety embrace. Treason, murder and robbery are well-defined public wrongs, and may well be punished by human laws. Falsehood, ingratitude, and numerous instances of the most disgraceful violations of confidence and trust are also *crimes;* but they are crimes for which the perpetrator is, necessarily, amenable only to his conscience and to his God.

These remarks, I conceive, are applicable, in their fullest extent, to the offence with which the prisoner stands charged in the indictment now under consideration. It is impossible to distinguish this from any other case in which a man obtains goods *on his own responsibility,* by means of a mere *untruth.* This has been repeatedly held insufficient; but, before I proceed to cite or comment on adjudged cases, let us for a moment consider the point as it regards principle, and see what would be the consequence of a recognition of the opposite doctrine.

J. S., in order to obtain a loan of money, represents himself to be perfectly solvent, and that the amount of his estate much exceeds his just debts. His pretence is

N'W YORK,
Dec. 1823.

The People
v.
Dalton.

successful, and he accomplishes his object. It afterwards appears conclusively, that this is an intentional and impudent falsehood. Would an indictment lie against J. S. on the statute in question? I trust it would not.—T. N. obtains goods on credit, by displaying a list of his debtors; amongst whom he enumerates divers persons as indebted to him in a large amount, and states them all to be persons of responsibility and credit. It is proved, that at the time of the representation, not one of those persons was solvent, and that this fact must have been known to T. N. when he made it. Here, too, is a gross falsehood; yet I presume it will not be contended that T. N. is therefore indictable. Nevertheless, each of these false representations "*relates to an existing fact.*"— They are not "representations as to what will or will not happen." If, therefore, no indictment could in either instance be sustained, I would, with much deference to the opinion of the learned judge who presided at the decision of the case of James Conger, (4 C. H. R. 68.) suggest, that the first distinction taken in that case extends the principle farther than expediency, public policy, or authority will warrant.*

Innumerable instances daily occur, (and that too amongst men who sustain a high reputation, both in the mercantile world and in society at large,) in which credit is obtained by means altogether inconsistent with

---

* In the case alluded to, (4 C. H. R. 68.) his honour the Mayor, in pronouncing the opinion of the court, says, "A false pretence must relate to an existing fact. Any representation as to what will or will not happen, cannot, in our opinion, be considered as a false pretence. This marks the distinction between a false promise or a false representation, and a false pretence within the statute."

honorable principle and strict integrity, and where *false-* hood forms the principal ingredient in the fraud. It is to be regretted that human justice cannot, consistently with sound policy, reach such cases. If this were attempted, however, so numerous would be the accusations presented for the adjudication of courts of criminal jurisdiction— so infinitely various would be the circumstances and complexions of those cases—so uncertain would be the landmarks of the law—that it would become totally impossible to establish any general rules on the subject of frauds.

Aware of this difficulty, courts have been compelled to adopt the following as a general principle : " Where a man makes use of a false token, or any deceit or artifice calculated to gain credit *beyond his own assertion*, or his act predicated on *his own responsibility*, and by such means obtains money or goods, this offence falls within the statute, and the defendant is liable to its penalty." (George Lynch's case, 1 C. H. R. 139.) This I conceive to be the true limitation of the rule ; and I do not think it necessary to resort to a single argument to show that the pretence laid in the indictment does not come within it.

The same principle decided in Lynch's case is recognised in Cromwell and Field's case, (3 C. H. R. 38.) and in Dinah Perry's case. (1 C. H. R. 164.) In the case last mentioned it appeared, " that the prisoner came to the shop of one George Lee, in Greenwich-street, and called for a pair of morocco shoes, stating that she lived with Mrs. Newton, who resided but a short distance from Lee ; and that if he would suffer her to take the shoes, she would carry them to her mistress, and if they

suited, she, the prisoner, would return the money ; other-
wise the shoes.

" The prisoner not returning, Lee went in pursuit, and
found the prisoner did not live with Mrs. Newton, but
had embarked on board a ' sloop to go up the North Riv-
er, and he took the shoes from her possession.

"His honor the mayor charged the jury, that the of-
fence of obtaining goods by false pretences under the
statute, was not supported by the testimony in this case.
This was not a false representation against which ordi-
nary prudence could not guard. Had the prisoner made
use of any artifice or circumvention whereby she had
obtained the goods on the credit of Mrs. Newton, then her
offence would have been within the statute ; but according
to the testimony it appeared, that by a resort to a false-
hood merely, the prisoner obtained the property on her
own credit."

The court concluded by stating to the jury, that a con-
viction would furnish a dangerous precedent ; and an im-
mediate acquittal was the result.

Now, I would beg leave to suggest, that if the decision
in the case last cited be law, and if it be true that the de-
fendant by representing that she lived with Mrs. New-
ton, and was her servant, was not guilty of such a "fraud
and circumvention" as would bring her case within the
statute, but " of a falsehood merely," then James Dalton,
the defendant, does not appear, from the allegations of the
indictment, to have committed an offence cognizable in
this court.

In Dinah Perry's case, the defendant stated that she
lived with Mrs. Newton, and that Mrs. Newton was her
mistress. It appears on the face of the indictment un-
der consideration, that Dalton represented himself to re-

N'W YORK,
Dec. 1823.

The People
v.
Dalton.

side at No. 77 Chatham-street, and that he was a grocer
Here is in each instance *a falsehood as to residence and occupation.* These falsehoods were in each case the means of obtaining credit, and they are, therefore, parallel.

If Dinah Perry had procured the goods under a representation that she had been sent by her mistress for them, the charge against her would have been sustained. So would it have been in the present instance, if James Dalton, the defendant, had represented that he was the agent of a grocer transacting business at No. 77 Chatham-street, and that he had sent him for the butter.

In either of the cases supposed, the defendants would have been, respectively, guilty of *"making use of a deceit calculated to gain credit beyond their own assertion, or their acts predicated on their own responsibility,"* which we conceive to be the gist of the offence.

We trust this distinction, which we believe *to be a* sound one, has been sufficiently enforced, both on principle and by authority. If the *name and credit of any individual, other than the defendant,* was introduced and used, at the time of obtaining the goods, he is guilty. On the other hand, if his relation amount merely to the assertion of *any facts with regard to himself,* or of *his own credit and responsibility,* and if on that relation the seller part with his goods, the defendant is guilty of a dereliction from moral honesty, but not of an indictable crime.

In order to render the distinction for which we contend more clear, we shall refer to some cases, in which the accused has been convicted on the ground that he made use of the credit and name of another individual. (Miller's case, 12 Johns. Rep. 292. Joseph Heath's case,

N'W YORK, 1 C. H. R. 116. Peter Johnson's case, 1 C. H. R. 116.
Dec. 1823. Eli B. Mott's case, 3 C. H. R. 155. Solomon Valentine's
The People case, 4 C. H. R. 36.)
v.
Dalton.

Should the court, notwithstanding the suggestions which have been offered on this subject, be of opinion that the prisoner may be guilty under the statute, even when the pretence with which he stands charged consists in a mere *falsehood*, calculated to obtain property on his own responsibility, I shall insist on his discharge on the following ground : The pretence laid in the indictment is not such an one as Hammelin could repose confidence in, consistently with ordinary prudence and caution.

I deem it unnecessary to dilate on the importance of precluding him from all recourse to this court, unless he has, in his transactions with the prisoner, made use of such diligence and care. Were every individual who thought proper to part with his property, on the idle and groundless representations of a stranger, allowed to resort to the criminal tribunals of his country, the attendant evils and inconveniences would be innumerable. One of the principal of these, would be the diminution of vigilance and caution on the part of the seller. Few would suspect a man of resorting to falsehood and deception for the purpose of obtaining goods to a trifling amount, if a severe and ignominious punishment were, in all cases, the certain consequences of detection. Caution would be destroyed, and the bold and artful depredator would find in the confiding and unsuspicious citizen an easy prey. The number of offenders would accordingly be increased; and the catalogue of crime, instead of being diminished, would be swelled almost beyond conception. It is surely better, then, to refuse to heedlessness a

legal sanction, and to adhere to the universal maxim of the law, that courts of justice were instituted for the protection of the vigilant and the watchful, and not of those who slumber.

This principle is clearly stated in the case of Cromwell and Field. 3 C. H. R. 38. "Admitting it to be false," (says his honor the mayor, in the case alluded to,) "that Cromwell was solvent, and that Haviland and Field would become his endorsers, it was but a naked falsehood concerning his own circumstances and giving an endorser, and therefore, not indictable on the ground of obtaining goods by false pretences. It was in the power of Otis and Swan to inquire for themselves as to the credit of Cromwell, and also, to ascertain whether Haviland and Field would become his endorsers; and it was, also, in their power to keep themselves completely secured by retaining possession of the goods until the note with the endorsement was furnished. When goods are sold for cash, or for notes, the delivery of the goods, and the payment of the money, or the furnishing the notes, are legally to be considered as concurrent acts; and if, from the confidence placed in the purchaser, or from courtesy, the goods are delivered without the money or the notes, a non-compliance with the contract cannot afterwards be converted into a criminal offence."

Again; " If merchants do their business in this manner, and place reliance on the bare assertions of individuals, when they have it in their power to ascertain the truth of their representations, and, also, amply to secure themselves by retaining the possession of their goods, they ought not afterwards to be permitted to make it the subject of a criminal prosecution. It is their duty, as well as

N'W YORK,
Dec. 1823.

The People
v.
Dalton.

their right, to be prudent and circumspect, and thereby to prevent such impositions."

In full accordance with this opinion, are the decisions in George Lynch's case, (1 C. H. R. 139.)  Dinah Perry's case, (1 C. H. R. 164.)  John Ring's case, (1 C. H. R. 7,) and the doctrine of the English courts, as it is laid down by Mr. East, (2 Eas. Pl. Cr. 818,) and by other writers of eminence.  Numerous authorities might be cited; but I deem those I have already alluded to amply sufficient to establish a point so obviously consistent with reason and sound policy.

I admit that this principle is in some degree impugned by certain dicta in the able and elaborate opinion of his honor C. D. Colden, Esq. in James Conger's case, above cited, (4 C. H. R. 68.)  Even the *dicta* of that very able and distinguished lawyer are, no doubt, entitled to the highest consideration.  I would beg leave, however, to suggest, that in the case alluded to, the operation of the statute is extended (not merely in my own opinion, but in that of the profession in general,) farther than principle or authority will warrant.

If the court should be of opinion that the indictment cannot be sustained, unless it allege such a pretence as could not be guarded against by the exercise of ordinary care and prudence, let us consider whether such care and prudence have in fact been exercised in the present case.

In the excellent essay of Sir William Jones on the Law of Bailments, ordinary diligence is defined to be such care " as every prudent man commonly takes of his own goods."  (J. on Bail. 26.)

Hammelin parted with his goods to a mere stranger; a man whom he had never before seen, on his bare assertion that he was a grocer residing at No. 77 Chatham-

street, when he might, by the inquiry of a moment, or by merely walking from his vessel to the place in question, have ascertained fully and completely the falsity of the tale. I assert without hesitation, and without fear of contradiction, that this was either gross carelessness or extreme weakness. The former must be the supposition, for every man is presumed to be ordinarily prudent, until the reverse is proved. (Conger's case, 4 C. H. R. 72.)

Hammelin, in his testimony, stated that he acted in conformity to the custom of captains of vessels engaged in the same trade. This, we conceive, can have no effect as an extenuation of his laches ; for a custom, to be good, must be neither absurd nor repugnant to public policy ; and, if these persons generally conform to an usage so preposterous and deleterious as the one in question, it is high time they were admonished to abandon it by the decision of a court of justice.

It may perhaps be urged in reply, that the question of ordinary diligence rests exclusively with the jury. It would be sufficient for me to say in reply to such a suggestion, that this case was reserved expressly for the opinion of the court, on all the points which might be urged in the defence. Independent of this consideration, however, another presents itself, which, we trust, will have much weight in the decision of the question. Uniformity and certainty are the great objects of the law in all its proceedings, even in civil suits. In criminal prosecutions it is of still higher importance. This object can be attained only by the adjudications of a court, and not by the vacillating and uncertain opinions of different juries. I will mention one instance, only, in which courts have taken the same point under their special and exclusive control.

I allude to due diligence in the case of notice of protest to the drawers and endorsers of bills of exchange, and to the endorsers of promissory · notes. This was at first regarded as a matter for the jury alone. The point was utterly unsettled. It was afterwards considered as a mixed question for the court and the jury. Still no definite principle was established. It was at length held to be a fair subject for the exclusive adjudication -of the court, and order and regularity followed. I conceive that the latter rule, by parity of reason, to say the least, should be adopted in the present case. (Kyd on Ex. 80, 81. Doug. Rep. 546, 581. Chit. on Bills, 290.)

If the court should, on the whole, be of opinion that a sufficient false pretence is set out in the indictment, I have still another point to urge in favour of the prisoner, which does not arise on the record, but which I conceive affords a conclusive ground on a motion for a new trial. It clearly appears from Hammelin's testimony, that in parting with his property, he was influenced not *solely* by the pretence alleged in the indictment, but, in a great measure, by a prepossession in favour of the defendant, in consequence of the latter's having made an antecedent purchase, and paid the amount agreeably to his promise.

In the first place, we would observe, that if a man obtains property from another in consequence of two or more "*false pretences*," operating jointly on the mind of the seller, there can be no doubt but both must be set out in the indictment. We grant, for the sake of illustration, that the pretence set forth in the present instance is in itself sufficient to warrant a judgment. Let us *then* suppose Dalton to have stated, (as he has done,) that he was a grocer, residing at 77 Chatham-street, *adding*, that he was employed by J. S. and T. N., persons of known responsibility and opulence, to purchase

the goods on their account and credit : could the present indictment, alleging only the one pretence, have been sustained in such a case ? Surely not ; for if it were only necessary to set out the one, the defendant might be indicted at the succeeding term for obtaining the goods on the other, (to wit, on the·allegation that he was employed by J. S. and T. N. ;) and could not avail himself of his plea of *auterfois acquit*, in bar of the second prosecution, inasmuch as it would not appear on the record that the two prosecutions were for the same offence. (1 Chit. Cr. Law, 368, 369. 2 Leach, 717. 1 Eas. Pl. Cr. 522. 9 Eas. Rep. 437. 3 Inst. 213.)

Again, the statute in question is highly penal, and is of course to be construed strictly. I do not insist on the frivolous and ridiculous distinctions which have sometimes been urged, and even sustained, in relation to this subject. I do not allege that a statute enacted to punish stealers of " horses," would not apply to a man who should steal a single horse; nor that an act mentioning dogs, could with propriety be confined, by the technical scruples of grave and learned expositors of the law, to the masculine gender alone. But I do contend, that the counsel for the people is bound to bring his case, substantially and strictly, within the provisions of the act and the allegations of the indictment. These requisitions are not complied with in the present instance, as I shall endeavour to show conclusively to the court.

The statute provides, that " every person who shall hereafter be convicted of knowingly and designedly, *by false pretences*, obtaining," &c. Now, can it be for one moment contended, that the requisitions of this act are satisfied by evidence that A. B. obtained goods by a certain false pretence, *combined with another act ?* Surely

N'W YORK,
Dec. 1823.

The People
v.
Dalton.

not in any case—much less when that *other act*, which operated as a *joint inducement*, is in itself an innocent one. Were it otherwise, an individual might be convicted under the statute, when the false pretence had *no more influence* on the mind of the original owner of the goods, than another perfectly innocent act of the accused. Nay, the pretence alleged may have had but a small and trifling effect, compared with that of the innocent inducement. Can the court pry into the secret impulses which actuate the hearts of men, and influence their conduct? Can a human tribunal, when a motive is mixed, estimate with mathematical precision the weight of its component parts? It is absurd to pretend it! I would venture to assert, that if Hammelin himself were here, he could not tell which had the most powerful effect in inducing him to part with his property—the pretence charged, or the prepossession created in favour of the accused by his honesty in the first transaction. The rule then must be, that to bring a case within the construction which the court are bound to give to a penal statute, the false pretence set out in the indictment must be the *sole act of the accused, operating on the mind of the person alleged to have been defrauded.*

This doctrine is distinctly recognized in the case of James Couger, above cited, in Abraham Collin's case, (4 C. H. R. 143,) Lucre and Markford's case, (1 C. H. R. 141,) and in William Davis' case, (4 C. H. R. 61.) This last case I conceive to be in point.

I do not deny the authority of Robert W. Steel's case, (5 C. H. R. 5.) There the prisoner had been several times in the store of the person whom he defrauded, prior to the period at which he obtained the goods in question; and the fact of his having seen the prisoner before, ope-

rated, in some degree, with that person, as an induce-

ment to part with his goods on credit. Here was a mere *accidental circumstance,* forming no part of the *res gesta ;* and which of course could not enter into the decision of the case, whatever weight the party injured might, of his own impulse, have attached to it. Nor would it perhaps have been otherwise, if the dress or equipage, the intelligence and information of the prisoner, or the respectability of his connexions and associates, had operated in some degree on the mind of the prosecuting witness. Indeed, it has been repeatedly, and I believe, correctly, decided, (particularly in James Conger's case,) that these are so vague and intangible, that the court cannot notice them in any way.  —

In the present instance, however, there is a distinct and substantive act of the prisoner, taking place at the very time of, and immediately connected with, the false pretence alleged—innocent in itself—forming part of the *res gesta*—and constituting an important part of the inducement. Surely, then, the accused cannot be said to have obtained the goods *solely* on the pretence set forth in the indictment; and if this be true, he must, on a new trial, be acquitted.

In the course of my argument, I have cited, for the most part, the decisions of this court. The reasons which have induced me to do so are obvious. As the offence in question is created and defined by our own statute, but few English authorities are at all applicable : and very few cases have been decided in the supreme court of this state. Those, however, which have been adjudged here, are numerous; and have generally been decided on solemn and able argument.

I now consign James Dalton to the protection of the

N'W YORK, laws; confident that, whatever may have been his guilt
Dec. 1823. in point of morality, the court will remember, in the de-
The People cision of his case, that "legal forms are the barriers of
v. justice."
Dalton.

After an able argument by H. Maxwell, Esq., (District Attorney,) on the part of the people, the defence was closed by Blake for the defendant, and the case taken under advisement. On the last day of the term, the following opinion of the court was delivered by his honor the Recorder:

*Per Curiam.* The law which governs this case, and all others under the statute, which makes it an indictable offence to obtain property by false pretences, with intent to cheat, is laid ably down by Mr. Colden, Mayor, in the case of the People v. James Conger, decided May Sessions, 1819, (4 C. H. R., 65.)

That case, and others to which it refers, decide,

1. That the statute has a very extensive application, and embraces a variety of *false pretences* not punishable at common law. (People v. Johnson, 12 Johns. Rep. 292. Rex v. Young and others, 2 Leach, 574. 2 East's Pl. Cr. 829.)

2. The false pretence must be by words, by writings, or by signs, and cannot consist in mere *show* or *appearance*—by equipage, dress, &c. (Conger's case, 4 C. H. R., 69, 70.)

3. The pretence must be made *before* the property is delivered. (John Stuyvesant's case, 4 C. H. R., 156.)

4. The pretence must be of an existing fact. (Conger's case, 4 C. H. R., 68.) and not a mere promise or representation that such or such a thing shall be done— as to pay cash—that a check shall be good or paid,

&c. (Ibid. 68, 69, Stuyvesant's case, 4, C. H. R., 156.)

5. But, where J. S. pretended that he was the captain of a vessel from a foreign port, just arrived, and by that means obtained goods, his offence was held indictable under the statute. (Samuel Smith alias Captain Juben's case, 5 C. H. R., 180.)

7. We are of opinion, that the authorities, on the whole, warrant the decision in the case last cited. It is also supported by the precedents to be found in English works of acknowledged correctness and high reputation. (Cr. C. Comp. 303.) This is a precedent where the defendant pretended that he was a merchant of great fortune, and was a housekeeper, residing at Penjo Conmon. The tast *count* charged the *pretence* that he was a merchant *only*. (6 Went. S. P. Index, tit. "Frauds," Eng. ed. 2 Starkie, 473. 3 Chitty's C. L. 1006., Eng. ed.)

Applying the principles above stated to Dalton's case, the court is satisfied that the pretence charged in the indictment, i. e. "that he was a grocer residing in Chatham-street," is sufficient to bring him within the statute.

7. The pretence must not be so absurd and irrational that no man of common sense would believe it to be true. But still it need not be so cunning and artful as to deceive a man of ordinary caution. (Abraham Collin's case. 4 C. H. R., 149. Conger's case. ib. 71.

8. We are of opinion that, whether the false pretence be of a nature calculated to deceive a party or not, is a question for the jury. (Abraham Collin's case, 4 C. H. R. 143. 149. Conger's case, 4 ib. 72. 2 East's Pl. Cr. 828.)

N'W YORK,
Dec. 1823.

The People
v.
Dalton.

We are of opinion, therefore, that the second ground taken by the counsel for the prisoner is not tenable, and, accordingly, the *motion in arrest of judgment is overruled.*

9. The *false pretence* must be the *sole inducement* for parting with the goods. (John Davis' case, 4 C. H. R., 61. 2 East, 831.)

10. Though such false pretence must be the *sole inducement*, and must be fully set forth in the indictment, yet accidental circumstances, which in conjunction with the false pretence influenced the delivery, need not be set out. (Robert W. Steel's case, 5 C. H. R., 5—7.) As the dress of the defendant, having seen him before, and the like.

We are satisfied, from an attentive examination of the authorities, that dress, style in appearance or living, keeping genteel company, resorting to fashionable places, and, perhaps, even former dealings with the party injured, though these circumstances may facilitate the fraud, need not be set out if they be not necessarily connected with the false pretence, and if they do not form part of the fraudulent scheme or *res gesta*. In such case they do not, in judgment of law, constitute any part of the inducement, and, consequently, need not be laid in the indictment.

In this case, however, the witness is understood to have said in substance, that he would not have trusted Dalton on the false pretence *alone ;* and as the motive which, in addition to the false pretence, operated on the mind of the witness when he gave credit to Dalton, may have constituted part of the *res gesta ;* and as this was one of the points reserved for the opinion of the court on its materiality, we, on this ground, direct a NEW TRIAL.